UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 15-CIV-61252-VALLE

CONSENT CASE

CAYETANO INFANTE,

    Plaintiff,

    v.

NANCY A. BERRYHILL,
Acting Commissioner of the
Social Security Administration,[1]

    Defendant.
_____

## ORDER ON MOTIONS FOR SUMMARY JUDGEMENT

THIS MATTER is before the Court on Plaintiff Cayetano Infante's Motion for Summary Judgment ("Plaintiff's Motion") and Defendant Nancy A. Berryhill's, Acting Commissioner of the Social Security Administration, Motion for Summary Judgment and Response ("Defendant's Motion"). *See* (ECF Nos. 32, 33, and 34). Pursuant to the parties' consent, this case is before the undersigned for all proceedings, including trial and entry of final judgment. *See* (ECF Nos. 24 and 27).

Accordingly, after due consideration of the record, the Motions, Plaintiff's Response, and Defendant's Reply (ECF Nos. 35 and 36), and being otherwise fully advised on the matter, Plaintiff's Motion for Summary Judgment is **DENIED**, Defendant's Motion for Summary Judgment is **GRANTED**, and the Administrative Law Judge's ("ALJ's") decision is **AFFIRMED** for the reasons set forth below.

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Consequently, pursuant to Federal Rule of Civil Procedure 25(d), Nancy A. Berryhill is substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.

I. **PROCEDURAL HISTORY**

This suit involves concurrent applications for disability insurance benefits and supplemental security income under the Social Security Act (the "Act"), 42 U.S.C § 401 *et seq*. On February 16, 2012, Plaintiff applied for benefits alleging a disability beginning on October 1, 2011. (R. 192-207).[2] Plaintiff's claims were initially denied and again upon reconsideration. (R. 93-104, 106-117). Thereafter, Plaintiff requested a hearing, (R. 118-19), which was held on November 6, 2013, before ALJ Scott Tews. (R. 33). Plaintiff, appearing with counsel, testified at the hearing with the help of an interpreter. (R. 35-47).

On February 18, 2014, the ALJ issued a decision (the "ALJ's Decision") denying Plaintiff's applications and finding that Plaintiff was not disabled within the meaning of the Act. (R. 21-28). The ALJ found that although Plaintiff could not return to his past work, he could nonetheless adjust to other work that exists in significant numbers in the national economy. (R. 26-27). On May 11, 2015, the Appeals Counsel denied Plaintiff's request for review, rendering the ALJ's Decision the Commissioner's "final decision." (R. 1-7); *see Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). Plaintiff now seeks judicial review of the ALJ's Decision. (ECF No. 1); *see also* 42 U.S.C. § 405(g). Both parties have moved for summary judgment, and the Motions are ripe for adjudication.

II. **STANDARD OF REVIEW**

Judicial review of the ALJ's final decision is limited to whether there is substantial evidence in the record as a whole to support the ALJ's finding and whether the ALJ applied the correct legal standards in making his determination. *Carson v. Comm'r of Soc. Sec. Admin.*, 440 F. App'x 863, 864 (11th Cir. 2012) (internal citations omitted); *see also* 42 U.S.C. § 405(g). "'Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable

---

[2] All references are to the record of the administrative proceeding filed as part of the Defendant's answer. *See* (ECF No. 23).

2

person would accept as adequate to support a conclusion.'" *Id.* (quoting *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *accord Hale v. Bowen*, 831 F.2d 1007, 1011 (11th Cir. 1987) (substantial evidence is "more than a scintilla, but less than a preponderance"). A court, however, "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [ALJ].'" *Winschel v. Comm'r of Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (internal quotation marks and citations omitted). Even if evidence preponderates against the ALJ's Decision, a court must affirm "if the decision is supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983) (citing 42 U.S.C. § 405(g)). Within this narrow role, however, courts do not act as automatons. *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986). Rather, they "must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Id.*

To qualify for benefits, a claimant must be disabled within the meaning of the Act. *See* 42 U.S.C. § 423 (standard for disability insurance benefits) and § 1382 (standard for supplemental security income benefits). A claimant is disabled if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one that "results from anatomical, physiological or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To determine eligibility, the ALJ employs a five-step sequential evaluation:

(1) Is the person presently unemployed?
(2) Is the person's impairment severe?
(3) Does the person's impairment meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart. P, Appendix 1 (the "Listings")?
(4) Is the person unable to perform his or her former occupation?

3

      (5)    Is the person unable to perform any other work within the economy?

20 C.F.R. §§ 404.1520(a)(4) (evaluation process for disability insurance benefits) and 416.920(a)(4) (evaluation process for supplemental security income benefits). An affirmative answer to any of the above questions leads either to the next question or, on Steps 3 and 5, to a finding of disability. *McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). A negative answer to any question, other than Step 3, leads to a determination of "not disabled." *Id.*

      Importantly, the burden of proof rests on the claimant through Step 4. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-39 (11th Cir. 2004). At Step 4, the ALJ must assess: (i) the claimant's residual functional capacity ("RFC"); and (ii) the claimant's ability to return to his past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). The regulations define RFC as that which an individual is still able to do despite the limitations caused by his impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). The ALJ will "assess and make a finding about [the claimant's RFC] on all the relevant medical and other evidence" in the case. 20 C.F.R. §§ 404.1520(e), 416.920(e). The RFC assessment is used to determine whether the claimant can return to his past relevant work under Step 4, and if so, "the ALJ will conclude that the claimant is not disabled." *Phillips*, 357 F.3d at 1238 (citations omitted). If a claimant cannot return to his past relevant work, then the ALJ proceeds to Step 5. *Id.*

      At Step 5, the ALJ considers the claimant's RFC, age, education, and work experience to determine whether the claimant "can make an adjustment to other work." 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v); *Phillips*, 357 F.3d at 1239. The ALJ must determine if there is other work available in significant numbers in the national economy that the claimant has the ability to perform. *Phillips*, 357 F.3d at 1239. If the claimant can make the adjustment to other work, the ALJ will determine that the claimant is not disabled. *Id.* Conversely, if the claimant cannot make the adjustment to other work, the ALJ will determine that the claimant is

4

disabled. *Id.* The ALJ may determine whether the claimant has the ability to adjust to other work in the national economy by either: (1) applying the Medical Vocational Guidelines (contained within 20 C.F.R. part 404, subpart P, appendix 2) (the "Grids"); or (2) using a Vocational Expert, who can opine on whether someone with the claimant's limitations can obtain employment in the national economy. *Id.* at 1239-40.

### III. THE HEARING RECORD

#### A. Plaintiff's Testimony

Plaintiff, who was born in the Dominican Republic, moved to the United States in 1993. (R. 37). Through an interpreter, Plaintiff testified that he has a sixth grade education and speaks "very, very little" English. (R. 35, 38). Plaintiff was 53 years old on the alleged onset date and 55 years at the administrative hearing. (R. 26, 37-38). Plaintiff lives with his wife, teenage son, and his wife's extended family. (R. 38).

Prior to the alleged onset date, Plaintiff had worked as a landscaper and a janitor in a supermarket/mini market. (R. 41-42, 43). Plaintiff stopped working in October 2011 because he was unable to lift boxes or bend down. (R. 43). According to Plaintiff, his finger tips on his right hand go numb every 40 minutes, but he had not told the doctor about it. (R. 44-45). Plaintiff also stated that he is unable to perform a job that requires standing six hours in an 8-hour day. (R. 45). Additionally, Plaintiff testified that can only lift up to ten pounds because he cannot use his left arm due to pain that he believes was caused by his previous landscaping work. (R. 45-46). Plaintiff cannot squat or stoop because he is unable to bend his left leg. (R. 46). Plaintiff takes his medications regularly without side effects. (R. 45).

### B. Vocational Expert's Testimony

The Vocational Expert testified that Plaintiff's past relevant work as a landscaper was an unskilled, heavy job, with an SVP of 2. (R. 48). Plaintiff's job as a janitor in the supermarket/mini market was an unskilled, medium job, also with an SVP of 2. (R. 48).

The Vocational Expert testified based on four hypotheticals. First, the Vocational Expert testified that a hypothetical individual of the same age, education, and work experience as Plaintiff could still perform other work in the national economy even if the person was limited to medium exertional work with the additional limitations that the person could not climb ladders, ropes, or scaffolds, nor work in high exposed places. (R. 48-49). With these limitations, Plaintiff could work as a dishwasher (DOT # 920.687-010), sandwich maker (DOT # 317.664-010), or a busboy (DOT #311.677-018), all unskilled jobs with a medium RFC and SVP of 2. (R. 49). Additionally, even if the individual was limited to stooping occasionally, the Vocational Expert testified that the person could still perform these three jobs. (R. 50). If, however, the hypothetical individual had more than four unscheduled work absences per month, the person would be precluded from all work. (R. 50). Lastly, if the hypothetical individual was limited to lifting no more than ten pounds frequently, the individual would be limited to sedentary work. (R. 51).

## IV.   THE ALJ'S DECISION

After reviewing the evidence and conducting the requisite five-step analysis, the ALJ held that Plaintiff "has not been under a disability, as defined in the Social Security Act, from October 1, 2011, through [February 18, 2014]." (R. 27).

At Step 1, the ALJ determined that Plaintiff has not engaged in substantial gainful activity since October 1, 2011, the alleged onset date. (R. 23).

At Step 2, the ALJ found that Plaintiff had the following severe impairments: non-insulin-dependent diabetes mellitus, osteoarthritis, arthropathy, chronic pain syndrome, and carpal tunnel syndrome. (R. 23).

At Step 3, the ALJ concluded that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the Listings. (R. 24).

At Step 4, the ALJ determined that Plaintiff had the RFC to perform medium work, except that he should additionally avoid exposure to heights or climbing ropes, ladders, or scaffolds. (R. 24). In reaching this conclusion at Step 4, the ALJ considered Plaintiff's symptoms, and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, as well as opinion evidence. (R. 25). The ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms. *Id.* However, the ALJ found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely credible. *Id.* Nonetheless, the ALJ ultimately concluded that Plaintiff could not perform his past relevant work and proceeded to Step 5 of the sequential evaluation process. (R. 26-27).

At Step 5, based on the testimony of the Vocational Expert and considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff was capable of making a successful adjustment to other work that exists in significant numbers in the national economy. (R. 26-27).

## V.  DISCUSSION

Plaintiff raises several arguments on appeal. First, Plaintiff asserts that the ALJ committed reversible error by improperly discounting the opinions of Plaintiff's treating doctors. (ECF No. 32 at 10-12, 19). Second, Plaintiff argues that the ALJ erred in concluding that

Plaintiff has the RFC to perform work at a medium exertional level and instead should have found Plaintiff disabled using the Grids. (ECF Nos. 32 at 17-19 and 35 at 2-3). Third, Plaintiff contends that the ALJ failed to consider Plaintiff's limited ability to communicate in English when evaluating his ability to work. (ECF No. 32 at 12-14 and 35 at 6-9). Lastly, Plaintiff argues that the ALJ erred in assessing Plaintiff's credibility. (ECF No. 32 at 14-16). As more fully discussed below, the undersigned finds that substantial evidence supports the ALJ's decision and it should be affirmed.

### A. *The ALJ Properly Evaluated the Medical Opinions*

Plaintiff argues that the ALJ erred by improperly discounting the opinions and treatment notes of Plaintiff's treating doctors (Drs. Emilio Pando and Lowell Davis) in determining Plaintiff's RFC to perform work at the medium exertional level. (ECF No. 32 at 10-12, 19-20).

While opinions from treating sources are generally accorded great weight, the ALJ can, if good cause exists, give less weight to such an opinion. *Crawford v. Comm'r of Soc. Sec. Admin.,* 363 F.3d 1155, 1159 (11th Cir. 2004); *see also* 20 C.F.R. § 404.1527(c)(2). "Good cause" to discount a treating physician's opinion is established "when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) a treating physician's opinion was conclusory or inconsistent with the doctor's own medical records.'" *Winschel,* 631 F.3d at 1179 (quoting *Phillips*, 357 F.3d at 1241); *see also Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) ("The law is clear that . . . the ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion."). Nonetheless, the ALJ must clearly articulate his reasons for giving less weight to a treating physician's opinion, and failure to do so is reversible error. *Lewis,* 125 F.3d at 1440.

*1. Dr. Pando's Treatment Records and Opinions*

From approximately July 2010 through October 2013, Dr. Pando treated Plaintiff for chronic back and leg pain and diabetes. (R. 23, 257-66, 271-73, 315-23, 357-67). In October 2013, Dr. Pando completed two Medical Source Statements—one regarding Plaintiff's physical condition and one concerning Plaintiff's diabetes. (R. 333-37, 339-42). Dr. Pando diagnosed Plaintiff with chronic low back pain and noted that range of motion increases Plaintiff's pain. (R. 333). Dr. Pando limited Plaintiff to sitting or standing for less than 2 hours in an 8-hour workday, to occasionally lifting 10 pounds, and opined that Plaintiff should never stoop or bend and should rarely crouch or squat. (R. 334, 335, and 341). Dr. Pando also opined that Plaintiff can use his hands and fingers 100% of the time in an 8-hour workday. (R. 335, 341). This opinion would place Plaintiff in the sedentary exertional level.

Plaintiff argues that Dr. Pando's two Medical Source Statements are entitled to greater weight because they were supported by objective medical evidence, including the doctor's progress notes. (ECF No. 32 at 11). The record and the ALJ's articulated reasons, however, provide substantial evidence for the ALJ's decision to give Dr. Pando's opinion "little weight." *See* (R. 26). Specifically, the ALJ noted that Dr. Pando's two opinions were "offered with little rationale or analysis," and "were inconsistent with the weight of the medical evidence, including Dr. Pando's own objective findings." (R. 26). The ALJ further noted that "the records from Drs. Pando and Davis consistently indicated that [Plaintiff] had normal strength, range of motion, reflexes, gait, and functioning." (R. 26). The ALJ further explained:

> As for opinion evidence, Dr. Pando completed questionnaires in October 2013, in which he described an extremely narrow range of sedentary work to which [Plaintiff] was purportedly restricted, due to diabetes and lower back pain. Dr. Pando offered no analysis or explanation for his opinions, except that [Plaintiff's] symptoms were 'occasionally severe, particularly with range of motion.' [Dr. Pando] indicated that, among other limitations, the claimant could lift up to ten pounds, that he could walk about one-half block, that he could sit for

9

less than two hours per day, and that he could stand or walk for less than two hours per day (Exhibits 8F and 9F).

(R. 25).

The ALJ also noted that despite elevated hemoglobin levels, Dr. Pando's treatment notes showed few complications related to Plaintiff's diabetes and Plaintiff consistently denied symptoms of dizziness, blurry vision, or headaches. (R. 23-24). Regarding Plaintiff's musculoskeletal condition, the ALJ found that Plaintiff complained of moderate, intermittent lower back pain and occasional leg pain. (R. 24). In February 2012, Plaintiff complained that occasional back pain interfered with his bending at the waist and affected his work.[3] (R. 24, 271, 357). Nevertheless, as noted by the ALJ, despite Plaintiff's complaints, Dr. Pando often found Plaintiff to have normal range of motion and strength and unremarkable musculosketal exams. *See, e.g.,* (R. 24, 258, 260, 261, 264, 265, 266, 271-72, 316, 358, 359). The ALJ also noted that although Dr. Pando diagnosed carpal tunnel syndrome, Dr. Pando did not describe any symptoms, nor rely on any objective findings or electrical studies related to this diagnoses. (R. 24, 320, 321, and 364).

2. *Dr. Davis' Treatment Records*

Unlike Dr. Pando, Dr. Davis (Plaintiff's pain management specialist) did not complete a Medical Source Statement. Nonetheless, the ALJ expressly considered Dr. Davis's treatment records in finding that Plaintiff had normal strength, range of motion, reflexes, gait, and functioning (i.e., Exhibits 3F, 4F, 5F and 11F). (R. 24). The ALJ found that Dr. Davis gave Plaintiff a series of epidural steroid injections between July and November 2011, after which Plaintiff reported that he had 90% improvement, though he still complained of intermittent left leg and lower back pain. (R. 24); *see, also* (R. 274) (Plaintiff's range of motion was "without

---

[3] The correct year of this consult is February 2012 rather than the ALJ's mistaken reference to February 2013. *Compare* (R. 24) *with* (R. 358).

restriction in all planes," with "minimal pain" on lumbar inflexion); *see also* (R. 278, 285, 288, 292, 296, 373-74). The ALJ also noted that during a September 2013 hospital visit for complaints of lower back pain after a fall, Plaintiff had normal gait, range of motion, and joint findings. (R. 24, 326-28). After approximately two years without treatment, Plaintiff returned to Dr. Davis in October 2013, complaining of intermittent back pain, for which he took over-the-counter medications. (R. 24). Upon physical examination, however, Plaintiff appeared to be in no acute distress, and there was no tenderness to palpation. (R. 24, 373). The ALJ expressly noted that "Plaintiff had normal strength in all four extremities and normal reflexes. Dr. Davis offered additional steroid injections, but [Plaintiff] wanted to 'hold off'" and opted instead for a supply of Lyrica. (R. 24, 373-74). Based on this analysis of the evidence, the ALJ gave Dr. Davis' opinion "little weight." (R. 26).

Against this backdrop, the undersigned finds that the ALJ had good cause to discount the opinions of Drs. Pando and Davis as inconsistent with the weight of the medical evidence. (R. 26). Moreover, the ALJ clearly articulated his reasons for giving the opinions "little weight." Thus, there is no reversible error because substantial evidence supports the ALJ's Decision and the ALJ applied the proper legal standards.

### B. The ALJ Properly Determined Plaintiff's RFC

The Social Security regulations classify the physical exertion requirements for work as sedentary, light, medium, heavy, and very heavy. *See* 20 C.F.R. § 404.1567. Along with age, education, and work experience, the ALJ considers a claimant's RFC in determining whether the claimant can work. *Lewis*, 125 F.3d at 1440. An RFC determination is an assessment based on all relevant evidence of a claimant's remaining ability to do work despite his impairments. *Id*. Ultimately, the responsibility for determining a claimant's RFC rests with the ALJ, and the ALJ is not required to give any special significance to the opinion of medical sources on the issue.

20 C.F.R. § 404.1527(d)(2).  Here, after having properly weighed the opinions of Plaintiff's treating doctors, the ALJ correctly determined Plaintiff's RFC to be in the medium exertional level.

Nonetheless, Plaintiff argues that he is unable to perform the physical demands of medium work and that his RFC "should be no more than 'light' and more likely 'less than sedentary.'"  (ECF Nos. 32 at 18 and 35 at 6).  Under the Social Security regulations, medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds.[4]  20 C.F.R. § 404.1567(c).  A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday.  SSR 83-10 at 6 (1983 WL 31251).  As in light work, sitting may occur intermittently during the remaining time.  *Id.*  Additionally, medium work requires the use of the arms and hands to grasp, hold, and turn objects, whereas sedentary work requires precision use of the fingers in addition to the use of the hands and arms.  *Id.*  Although the regulations provide that the full range of medium work usually requires frequent bending or stooping, the Vocational Expert specifically identified jobs that Plaintiff could perform at the medium exertional level that did not require stooping.  *See* (R. 50) ("Neither dishwasher nor sandwich maker nor busboy would require occasional stooping.").

Notwithstanding Plaintiff's claim that his RFC should be at the sedentary or light levels, substantial evidence supports the ALJ's medium RFC determination.  The ALJ considered the medical and opinion evidence to determine Plaintiff's RFC.  Specifically, the ALJ found that although Dr. Pando "described an extremely narrow range of sedentary work to which [Plaintiff] was purportedly restricted due to diabetes and lower back pain," the doctor "offered no analysis or explanation for his opinions, except that [Plaintiff's] symptoms were 'occasionally severe,

---

[4] In contrast "light work" is limited to lifting no more than 20 pounds at a time and sedentary work involves lifting no more than 10 pounds at a time.  SSR 83-10 at 5.

12

particularly with range of motion.'" (R. 25). In contrast to his Medical Source Statement opinion, Dr. Pando's treatment notes often reflect Plaintiff's normal range of motion and strength. *See, e.g.*, (R. 24, 258, 260, 261, 264, 265, 266, 271-72, 316, 358, 359). The ALJ also noted that although Plaintiff had moderate and intermittent back pain, Plaintiff had obtained approximately two years of relief from epidural steroid injections. (R. 26); *see, e.g., Davis v. Barnhart*, 186 F. App'x 965, 966 (11th Cir. 2006) (affirming ALJ's medium RFC determination where, among other things, the claimant's impairments could be treated with medication and radiation therapy).

Thus, although the ALJ determined that Plaintiff could not return to his past relevant work as a landscaper, which was heavy work, substantial evidence supports the ALJ's conclusion that Plaintiff has a medium RFC, with additional environmental limitations.

### C. Plaintiff's Limited Command of English and Advanced Age Are Not Dispositive

Plaintiff's next argues that his inability to communicate in English automatically leads to a determination of disability under the Grids. (ECF No. 32 at 12-14 and ECF No. 35). Plaintiff is correct that the Social Security Administration considers a person's ability to communicate in English to evaluate what work, if any, he or she can do. 20 C.F.R. § 404.1564(b)(5). The regulations also consider age as an increasingly adverse vocational factor for persons with severe impairments. SSR 83-10 at 8. Nevertheless, Plaintiff's arguments regarding the applicability of the Grids are erroneous for several reasons.

First, the ALJ was not required to follow the Grids. "[E]xclusive reliance on the grids is not appropriate either when [the] claimant is unable to perform a full range of work at a given residual functional level or when a claimant has nonexertional impairments that significantly limit basic work skills." *Phillips*, 357 F.3d at 1242 (internal citations omitted). When the Grids are inapplicable, then the Commissioner must seek expert vocational testimony. *Foote v.*

*Chater,* 67 F.3d 1553, 1559 (11th Cir. 1995*).*  That is what occurred here.  Recognizing that Plaintiff's ability to perform all or substantially all of the requirements of a medium RFC was "impeded by additional limitations," (i.e., avoiding exposure to heights or climbing ropes, ladders, or scaffolds), the ALJ obtained the testimony of a Vocational Expert to determine the extent to which these limitations might erode the unskilled, medium occupational base.  (R. 27). The Vocational Expert testified that given Plaintiff's age, education, work experience, and reduced medium RFC, Plaintiff could still work as a dishwasher, sandwich maker, and busboy.  (R. 27, 49).

Plaintiff asserts that the ALJ "should have included the language limitations in the hypotheticals posed to the Vocational Expert."  (ECF No. 32 at 14).  Notably, however, the Vocational Expert was present during Plaintiff's testimony.  (R. 38).  Thus, the Vocational Expert was aware of Plaintiff's limited English.  Moreover, Plaintiff had an opportunity to question the Vocational Expert and pose hypotheticals that could have more specifically included a language limitation, but failed to do so.  Under these circumstances, the ALJ's failure to specifically articulate a language factor in the hypotheticals is not reversible error.[5]  *Bouie v. Astrue*, 226 F. App'x 892, 895 (11th Cir. 2007) (where the ALJ poses a hypothetical consistent with the RFC that is supported by substantial evidence, there is no error).

Second, even if the ALJ had relied on the Grids, Plaintiff's argument that his limited English would have led to a finding of disability is misplaced.  The ability to communicate in English (as part of the educational factor) is a consideration when a person's RFC falls within the sedentary and light RFC levels, but is not an express consideration in the medium RFC. *Compare* §§ 201.17 and 202.09 (Tables 1 and 2 for sedentary and light RFCs, respectively, in

---

[5] Moreover, the ALJ's finding that Plaintiff was able to communicate in English was, at worst, harmless error in that Plaintiff's language ability was not a determinative factor in the ALJ's Step 5 analysis.  *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (finding harmless error in the context of the whole case).

which a claimant is found disabled if he has unskilled or no previous work experience and is unable to communicate in English) *with* §§ 203.11 and 203.18 (Table 3 for a medium RFC, in which a claimant with unskilled or no previous work experience is found able to work without reference to language ability).[6]

Similarly unpersuasive is Plaintiff's argument that his advanced age should result in a disability determination. The regulations provide that if a person is within a few days to a few months of reaching an older age category, i.e., a borderline situation, and using the older age category would result in finding that a claimant is disabled, the ALJ will consider whether to use the older age category after evaluating the overall impact of all the factors of the case. 20 C.F.R. § 404.1563(b) (explaining how to apply age categories). Here, Plaintiff testified that he was born on April 7, 1958, and was 55 years old during the administrative hearing, rendering him a borderline case. (R. 37). In his Decision, the ALJ correctly concluded that Plaintiff was an individual closely approaching advanced age (i.e., between 50 and 54) on the alleged onset date, and subsequently became an individual of advanced age (i.e., age 55 or older). (R. 26); s*ee also* 20 C.F.R. §§ 404.1563(d)-(e) (describing closely approaching advanced age and advanced age, respectively). The ALJ, therefore, properly considered the older age category. *See, e.g., Lockwood v. Comm'r Soc. Sec. Admin.*, 616 F.3d 1068, 1072 (9th Cir. 2010) (concluding that the ALJ was not required to explain why she used a particular age category so long as she considered it).

---

[6] The cases that Plaintiff references to support his argument that his limited English should result in a disability finding miss this distinction and instead involve claimants with a sedentary or light RFC. (ECF Nos. 32 at 13 n.11 and 35 at 7-8 n.54-55); *see also Lorenzo v. Comm'r of Soc. Sec. Admin.*, No. 6:10-CV-369-ORL-18DAB, 2011 WL 2681986, at *1 (M.D. Fla. July 7, 2011) (reversing where the ALJ determined that claimant had a sedentary RFC, but failed to address claimant's English language limitations); *Lugo v. Chater*, 932 F. Supp. 497, 501-02 (S.D.N.Y. 1996) (where claimant had a sedentary RFC and ALJ did not explain claimant's language assessment); *Reyes v. Heckler*, 601 F. Supp. 34, 36-37 (S.D. Fla. 1984) (where the ALJ applied the Grids for sedentary work and erred in finding that claimant was literate in English). Thus, these cases are inapposite.

Lastly, for the first time in his Reply, Plaintiff argues that even if the ALJ was correct in finding that Plaintiff had a medium RFC, the ALJ should have nonetheless applied an "exception" to the Grids and found Plaintiff disabled.[7] *Compare* (ECF No. 32 at 13) (discussing §§ 201.09 and 202.09 regarding a sedentary or light RFC) *with* (ECF No. 35 at 2) (arguing for the first time that §§ 203.11 and 203.18 regarding a medium RFC should apply). Plaintiff's argument, however, is unpersuasive because there is no evidence that Plaintiff has 35 years or more of experience doing only arduous unskilled physical labor. Moreover, arguments raised for the first time in a reply are deemed waived. *In re Egidi*, 571 F.3d 1156, 1163 (11th Cir. 2009).

### D. The ALJ Properly Discounted Plaintiff's Credibility

Lastly, Plaintiff argues that the ALJ erred in assessing his credibility and rejecting his allegations of pain, without stating adequate reasons. (ECF No. 32 at 15-16).

The Eleventh Circuit has established a three-part "pain standard" that applies when a claimant attempts to establish disability through her own testimony regarding pain or other objective symptoms.[8] *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991). The ALJ is not required to use any particular language in applying the pain standard, as long as he sufficiently articulates the reasons for discrediting Plaintiff's testimony. *Davis v. Barnhart*, 153 F. App'x 569, 571 (11th Cir. 2005); *see also Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004) (ALJ

---

[7] The exception provides that an individual will be found disabled even if the person is able to do medium work where the individual (1) has a marginal education, (2) has work experience of 35 years or more doing only arduous unskilled physical labor, (3) is not working, and (4) is no longer able to do this kind of work because of a severe impairment(s). 20 C.F.R. Pt. 404, Subpt. P., App. 2, § 203(b).

[8] The pain standard requires: (1) evidence of an underlying medical condition; and either (2) objective medical evidence that confirms the severity of the alleged pain arising from that condition; or (3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain. *Holt,* 921 F.2d at 1223. Subjective pain testimony that is supported by objective medical evidence of a condition that can reasonably be expected to produce the claimant's symptoms is sufficient to sustain a finding of disability. *Hale,* 831 F.2d at 1011. If the Secretary refuses to credit such testimony, the Secretary must articulate explicit and adequate reasons. *Id.*

opinion need not use particular language or adhere to a particular format, and the decision should be read "as a whole"). Here, the ALJ concluded that, although Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms, his statements "concerning the intensity, persistence, and limiting effects of these symptoms were not entirely credible." (R. 25).

The ALJ articulated a number of reasons for finding Plaintiff's testimony not entirely credible. Specifically, the ALJ wrote:

> The medical evidence did not support [Plaintiff's] allegations of inability to bend the left knee or squat. To the contrary, he consistently had normal range of motion and strength. Despite scant mention of carpal tunnel syndrome, the weight of the evidence did not support [Plaintiff's] allegations of numbness in the fingers or of limited ability to lift or carry. To the contrary, he consistently had 5/5 strength in all four extremities. Finally, [Plaintiff's] inability to explain the recent four-year period without earnings further undermined his general credibility.

(R. 25).

As an initial matter, the Court rejects Plaintiff's reliance on *Bloodsaw v. Apfel*, 105 F. Supp. 2d 1223, 1227 (2000) for the proposition that his allegations of pain must be accepted as true. (ECF No. 32 at 16 n.13). In *Bloodsaw,* "the ALJ's failure to articulate explicit and adequate reasons for rejecting [claimant's] testimony requir[ed] that it be accepted as true." *Bloodsaw*, 105 F. Supp. 2d at 1227. This case is wholly different. Here, the ALJ adequately articulated his reasons for discrediting Plaintiff's testimony, including the medical record and Plaintiff's inability to explain the four-year gap in earnings. (R. 25).

Moreover, substantial evidence supports the ALJ's credibility determination. As noted above, the treatment notes of Plaintiff's treating doctors consistently reflected unremarkable physical examinations, despite Plaintiff's intermittent complaints of physical limitations and pain. (R. 24, 258, 260, 261, 264, 265, 266, 271-72, 316, 358, 359). The ALJ also noted that

Plaintiff's condition and pain improved with epidural steroid injections and Plaintiff experienced nearly two years of relief. (R. 24, 26).

Ultimately, credibility determinations are the province of the ALJ, and a clearly articulated credibility finding with substantial supporting record evidence will not be disturbed. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005); *Foote*, 67 F.3d at 1561-62. Here, the ALJ specifically considered Plaintiff's allegations regarding his impairments, assessed Plaintiff's credibility in the context of all the other evidence, and applied the proper legal standard. *See generally Carson.,* 440 F. App'x at 864. Thus, the Court finds no reversible error.

## VI.   CONCLUSION

For the reasons stated above, it is hereby **ORDERED AND ADJUGED** that:

1. Plaintiff's Motion for Summary Judgment (ECF No. 32) is **DENIED,** Defendant's Motion for Summary Judgment (ECF No. 34) is **GRANTED**, and the ALJ's Decision is **AFFIRMED**.

2. The Clerk is directed to enter judgement in favor of Defendant, to terminate all pending motions, and to **CLOSE** the case.

**DONE AND ORDERED** at Chambers in Fort Lauderdale, Florida on March 21, 2017.

*/s/ Alicia O. Valle*
ALICIA O. VALLE
UNITED STATES MAGISTRATE JUDGE

cc:   All Counsel of Record